Thad **ROSENAU and Troy Rosenau, Plaintiffs,**

v.

**FARM SERVICE AGENCY, Defendant.**

No. A1–02–01.

United States District Court, D. North Dakota, Southwestern Division.

May 11, 2005.

David S. Maring, Bismarck, ND, for Plaintiffs.

Cameron W. Hayden, Bismarck, ND, for Defendant.

ORDER GRANTING PLAINTIFFS' RENEWED MOTION FOR SUMMARY JUDGMENT AND DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HOVLAND, Chief Judge.

This dispute is back before the Court after remand to the Defendant. The Plaintiffs filed a Renewed Motion for Summary Judgment on November 10, 2004, and the Defendant filed a Motion for Summary Judgment on December 2, 2004. This case stems from a decision by the Natural Resources Conservation Service ("NRCS") and the Farm Service Agency ("FSA") that the Rosenaus had converted wetlands on land they rent and were ineligible for a portion of USDA federal farm program benefits. Based on the following discussion, the Court grants the Plaintiffs' Motion for Summary Judgment and denies the Defendant's Motion for Summary Judgment.

I. BACKGROUND

The Court set forth an extensive review of the background of this dispute in its Order of February 6, 2003. (Docket No. 14). Thad Rosenau and Troy Rosenau are brothers who rent farmland in Foster County, North Dakota. The farmland at issue is known as Farm No. 1106, Tract 560, and consists of 433 acres. In May of 1999, after a heavy rainfall, the Rosenaus used a one-bottom plow to cut furrows through Tract 560. On July 30, 1999, Troy Rosenau received a letter from the NRCS stating it had "received a report of a potential wetland violation." (R. at 723). This report prompted an inspection by the NRCS.

On January 18, 2000, the Rosenaus each received a letter from the NRCS stating the District Conservationist was making a "Final Technical Determination" regarding the reported potential wetland violations. (R. at 52). The "NRCS–CPA–026E" Form accompanying the letter indicated Field 3 of Tract 560 contained 20.9 acres of "converted wetlands" converted in 1999. (R. at 56).

As a result of the NRCS's actions, the Rosenaus appeared before the Foster County FSA Committee on February 24, 2000, to determine their continued eligibili-

ty for USDA farm program benefits. (R. at 635). The FSA Committee determined that the Rosenaus did not act in good faith when plowing the furrow on Tract 560 and recommended that each of the Rosenaus lose $6,000 of farm program benefits. (R. at 635). On March 3, 2000, the Rosenaus received a letter from the FSA Committee informing them of its decision. (R. at 635). The Rosenaus requested a review of both the NRCS determination and their ineligibility for USDA farm program benefits.

On May 15–21, 2000, a field review was conducted by various individuals including representatives from the FSA and NRCS, along with the Rosenaus and a soil scientist they hired. (R. at 85). The field review was conducted in response to a request by the Rosenaus. The results of the field review differed from the January 18, 2000, Final Technical Determination, in that the NRCS determined a total of 10.4 acres in Field 3 of Tract 560 were "converted wetlands" compared to the 20.9 acres originally found to be converted. (R. at 85). The areas previously identified as "converted wetlands" were excluded for various reasons including qualifying for a "minimal effect" exemption, not being part of the original wetland inventory, or being considered a farmed wetland, wetland, or a non-wetland. (R. at 85–86). As a result of the May 2000 field review, a second "Final Technical Determination" was issued by the NRCS wherein eight wetlands totaling 10.4 acres were found to be "converted wetlands." (R. at 661). On June 7, 2000, the State FSA Committee concluded the County Committee had been too lenient and requested that the Rosenaus be declared ineligible for a total of $46,960 of program benefits.

At this point, the Rosenaus appealed and requested a hearing. On October 18, 2000, an evidentiary hearing was held before Hearing Officer Richard L. Nelson ("Hearing Officer"). The Rosenaus and representatives from the FSA and NRCS were present at the hearing, and both parties presented documentary and testimonial evidence. On November 17, 2000, the Hearing Officer issued an "Appeal Determination" which concluded:

The Agency's decision, which found that the Appellants converted eight wetlands, was in error. The portion of the NRCS determination, which found that the Appellants did not qualify for a minimal effect exemption, is inconclusive because the Agency relied upon a Hydrogeomorphic model that had not yet been approved for Agency use. The County Committee determination, which concluded that the Appellants lacked good faith, was flawed because the County Committee was not provided complete and accurate information from NRCS in which to make their determination.

(R. at 677).

On December 13, 2000, the FSA requested a review of the Hearing Officer's decision by the Director of the United States Department of Agriculture's ("USDA") National Appeals Division ("NAD") in accordance with the USDA's appellate procedure. (R. at 1070). On January 22, 2001, Norman G. Cooper, Director of NAD ("Director"), issued a "Director Review Determination" and reversed the Hearing Officer's determination. (R. at 1033). The Rosenaus requested that the Director reconsider his decision, and on February 13, 2001, the Director denied the request for reconsideration. (R. at 1022).

On January 7, 2002, the Rosenaus initiated the current action seeking review of the Director's decision. (Docket No. 1). On September 3, 2002, both the Rosenaus and the FSA filed motions for summary judgment. (Docket Nos. 7 and 10).

On February 6, 2003, the Court ruled on the parties summary judgment motions and found that the Agency's actions were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as to (1) the NRCS's determination that the Rosenaus converted wetlands, (2) the FSA's decision that the Rosenaus were not entitled to a good faith determination, and (3) the NRCS's reliance on expert opinion to determine the depth measurements in calculating the minimal effect exemption. However, the Court remanded the matter to the Agency for a new minimal effect exemption calculation based on a functional assessment that meets the criteria set forth in 7 C.F.R. § 12.30(a)(3).

In an apparent response to the remand, the Defendant adopted three assessment models[1] in accordance with 7 C.F.R. § 12.30(a)(3) as of May 2003. *See* Docket No. 19, Exhibits C & D. On November 3, 2003, the Rosenaus' attorney received a letter from the Defendant's attorney, which stated, in part, as follows:

I am writing in regards to the procedure which will be followed while this case in on remand. As you know, the District Court ordered the agency to make a new minimal effects calculation based upon the functional assessment model meeting the requirements of 7 C.F.R. § 12.30(a)(3). NRCS has now formally adopted the assessment mode (sic) for use. No further fact finding hearing is necessary, and the agency does not intend to hold one. This letter shall serve

notice to you that the agency will make a new calculation utilizing the existing record. When the new calculation has been completed, an agency decision will be issued.

*See* Docket No. 19, Exhibit A.

In a letter dated January 10, 2004, the NRCS informed the Rosenaus' of the following:

In response to a District Court Order, we are issuing a minimal effect determination based on the functional assessment model meeting the requirements of 7 C.F.R. 12.30(a)(3). The minimal effect determination is based on the Operational Guidebook for the Hydrogeomorphic Assessment of Temporary and Seasonal Wetlands, 1997. The determination of minimal effect is based on NRCS guidelines as outlined in the North Dakota— Minimal Effect Evaluation Procedure Worksheet (attached).

This minimal effect determination did not change our previous determinations. Wetlands number 1, 1a, 31, 36, 38, and 72 do not qualify for a minimal effect determination at the time of conversion.

*See* Docket No.21, Exhibit B.

On November 11, 2004, the Rosenaus' renewed their summary judgment motion. The Rosenaus' contend that they were entitled to a minimal effect exemption calculation based on a functional assessment model meeting the requirements of 7 C.F.R. § 12.30. They also assert the fact the Defendant did not have a functional assessment model in place at the time of the alleged conversion which deprived

---

**1.** Thomas E. Jewett, State Conservationist approved the following assessment models: *Operational Draft Guidebook for the Hydrogeomorphic Assessment of Temporary and Seasonal Wetlands, 1997* approved for use on temporary and seasonal depressional (pothole) wetlands in North Dakota; *Interim Hydrogeomorphic Assessment Model for Groundwater Discharge, Low Permeability (Glacial*

*Till) Substrate, Slope (Linear) Wetlands in the Northern Plains,* Version 4.0 (May 2001), approved for use on slope wetlands lacking concentrated (channel) flow in North Dakota; *Interim Functional Assessment Model for Lake Dakota Sand Plains, Version 2.2 February 28, 1999,* approved for use on endosaturated wetland in southeastern North Dakota. *See* Docket No. 19, Exhibit C.

them of an opportunity to qualify for the minimal effect exemption. The Rosenaus ask the Court to reinstate USDA farm benefit program benefits in the amount of $23,480 plus interest as to both Troy Rosenau and Thad Rosenau.

On December 2, 2004, the Defendant filed a motion for summary judgment. The Defendant relies solely on its assertion that as of May 2003, it had adopted a hydrogeomorphic assessment model (the 1997 Guidebook) as required by 7 C.F.R. § 12.30 and used this model to determine that the Rosenaus were not eligible for a minimal effect exemption.

## II. *LEGAL DISCUSSION*

■ As stated in the Court's previous order, this Court's review is limited to a determination of whether the agency's determination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Barthel v. U.S.D.A.,* 181 F.3d 934, 937 (8th Cir.1999). "This narrow review entails a 'searching and careful' de novo review of the administrative record presented to determine 'whether the decision was based on a consideration of relevant factors and whether there has been a clear error of judgment.'" *Downer v. United States,* 97 F.3d 999, 1002 (8th Cir.1996) (quoting *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)).

> To perform this review the court looks to whether the agency considered those factors Congress intended it to consider; whether the agency considered factors Congress did not intend it to consider; whether the agency failed entirely to consider an important aspect of the problem; whether the agency decision runs counter to the evidence before it; or whether there is such a lack of a rational connection between the facts found and the decision made that the disputed decision cannot "be ascribed to a difference in view or the product of agency expertise."

*Id.* Further, if the agency has not provided a reasoned basis for its action, the court may not supply one. *Id.*

■ It is well-established that a reviewing court may not substitute its judgment for that of the agency, and the court must give substantial deference to an agency's determination. *Id.* "This deference is particularly appropriate when the agency determination in issue concerns a subject within the agency's own areas of expertise." *Id.*

> An agency making fact-based determinations in its own field of expertise, particularly where those determinations are wrapped up with scientific judgments, must be permitted "to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive."

*Id.* (quoting *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)).

It is undisputed that the Defendant must comply with the provisions of 7 C.F.R. § 12.6(c)(2)(v), which provide that the NRCS shall determine:

> Whether the actions of a person(s) with respect to the conversion of a wetland or production of an agricultural commodity on converted wetland would have only a minimal effect on the functions and values of wetlands in the area.

*See also* 7 C.F.R. § 12.6(c)(2)(viii) (stating NRCS shall determine whether the conversion was for the purpose or has the effect of making production possible). It is undisputed that "[s]uch a determination shall be based upon a functional assessment of functions and values of the wet-

land under consideration and other related wetlands in the area, and will be made through an on-site evaluation." 7 C.F.R. § 12.31(d). The Code of Federal Regulations also states the

> NRCS shall make or approve ... functional assessments, ... and other technical determinations relative to the implementation of the wetland conservation provisions.

7 C.F.R. § 12.30(a)(3). This regulation clearly states the NRCS must either "make" or "approve" the functional assessments used in minimal effect determinations.

As this Court previously ruled:

> The Director did not make a determination that the Guidebook was either made or approved by the NRCS as required by 7 C.F.R. § 12.30(a)(3). Rather the Director accepted the unsupported assertions by the Agency that because an interdisciplinary team—whose members were not identified—had developed the guidebook and because other agencies had approved it, the model was appropriate for use in minimal effect determinations. The Director's decision was made without an articulated analysis or a consideration of the requirements set forth in 7 C.F.R. § 12.30(a)(3). Such a decision is an abuse of discretion and not in accordance with law. The Director's abuse of discretion is further evidenced by a failure to attempt to address the lengthy disclaimer contained in the Guidebook.

*See* Docket No. 15, p. 20.

Since the Court's Order of February 6, 2003, the Defendant approved three hydrogeomorphic assessment models to be used in calculating minimal effect exemptions. The Defendant approved the models in May 2003. It is important to note that one of the models approved in May 2003, the "Guidebook," was the model used to originally calculate the Rosenaus' minimal effect exemption. In essence, the Defendant used the Guidebook approved and adopted in 2003, to re-calculate the Rosenaus' minimal effect exemption for alleged violations that occurred in the summer of 1999. Not surprisingly, the Defendant reached the same result it had initially and determined the Rosenaus' did not qualify for the minimal effect exemption.

The Rosenaus' assert that the Defendant's use of the recently approved Guidebook in 2003 is the retroactive application of an agency rule and a violation of law. The Defendant failed to address the propriety of the retroactive application of the Guidebook. Rather, the Defendant relies on its assertion that it has complied with applicable law and satisfied its administrative duties. Thus, the issue before the Court is whether the Defendant may use a model approved in 2003 to calculate a minimal effect exemption from an alleged violation in 1999.

■ As the United States Supreme Court stated in *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 215, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), "[r]etroactivity is not favored in the law." Accordingly, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* "Retroactive application of policy is disfavored when the ill effect of such application will outweigh the need of immediate application, or when the hardship on affected parties will outweigh the public ends to be accomplished." *Iowa Power and Light Co. v. Burlington Northern, Inc.*, 647 F.2d 796, 812 (8th Cir.1981) (citations omitted). However, "a prescription 'is not made retroactive merely because it draws upon antecedent facts for its operation.'" *University of Iowa Hos-*

*pitals and Clinics v. Shalala,* 180 F.3d 943, 951 (8th Cir.1999).

■ The Defendant does not deny that it retroactively applied the Guidebook, approved in 2003, to an alleged violation from 1999. There is no question that the Defendant's approval of the Guidebook in May of 2003 is an agency policy. As the Eighth Circuit has held, "[r]etroactive application of policy is disfavored." *Iowa Power and Light Co. v. Burlington Northern, Inc.,* 647 F.2d 796, 812 (8th Cir.1981). The retroactive application of policy is not allowed "when the ill effects of such application will outweigh the need of immediate application, or when the hardship on affected parties will outweigh the public ends to be accomplished." *Id.* The Court finds that the second prong is applicable in this case.

■ Thus, the Court finds that the retroactive application of the Guidebook was an abuse of discretion and otherwise not in accordance with law. *Barthel v. U.S.D.A.,* 181 F.3d 934, 937 (8th Cir.1999) (a court's review of agency action is limited to a determination of whether the agency's determination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law). Simply stated, the Defendant's belated attempt to comply with 7 C.F.R. § 12.30 violated both the spirit of this Court's Order of February 6, 2003, and the letter of the law.[2]

As a result of the Defendant's failure to re-calculate the minimal effect exemption in accordance with the law, the Court finds that the Plaintiffs' are, as a matter of law, entitled to the exemption. There is no question that the Defendants may declare a person ineligible for USDA farm program benefits only after a determination of their eligibility for a minimal effect exemption. 7 C.F.R. § 12.4(g); 7 C.F.R. § 12.5(b)(1)(v). Thus, the Court finds that because the Defendant is responsible for creating a situation in which the Plaintiffs' eligibility for a minimal effect exemption cannot be determined in accordance with the controlling regulations, the Defendant should not reap the benefits of its noncompliance. The Court finds that the Plaintiffs' are each entitled, as a matter of law, to the reinstatement of their USDA farm benefit program benefits in the amount of $23,480 plus interest as required by law.

## III. *CONCLUSION*

The Court GRANTS the Plaintiffs' Renewed Motion for Summary Judgment (Docket No. 17–1). The Plaintiffs' request for oral argument is DENIED as moot. (Docket No. 17–2). The Court DENIES the Defendant's Motion for Summary Judgment (Docket No. 20). The Court ORDERS the Plaintiffs' USDA Farm Benefit Program benefits be reinstated in the amount of $23,480 plus interest from February 24, 2000, to May 11, 2005, as to Troy Rosenau and in the amount of $23,480 plus interest from February 24, 2000, to May 11, 2005, as to Thad Rosenau. Let judgment be entered accordingly.

IT IS SO ORDERED.

---

**2.** Given the general prohibition against retroactively applying a statue, rule or policy, the Court's Order of February 6, 2003, implicitly directed the Defendant to recalculate the minimal effect exemption based on a functional model approved in compliance with 7 C.F.R. § 12.30 and in place at the time of the alleged violation.