**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 09-1037**

———————

KATHERINE A. TYSON,

                Plaintiff – Appellant,

        v.

UNITED STATES DEPARTMENT OF AGRICULTURE,

                Defendant – Appellee.

———————

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.   Terrence W. Boyle,
District Judge.   (5:07-cv-00140-BO)

———————

Argued:  December 1, 2009          Decided:  January 13, 2010

———————

Before KING and SHEDD, Circuit Judges, and John Preston BAILEY,
Chief United States District Judge for the Northern District of
West Virginia, sitting by designation.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED**: Steven K. McCallister, SHANAHAN LAW GROUP, Raleigh,
North Carolina, for Appellant.   Neal Fowler, OFFICE OF THE
UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.
**ON BRIEF**: George E. B. Holding, United States Attorney, Anne M.
Hayes, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Katherine A. Tyson instituted these proceedings in the Eastern District of North Carolina in April of 2007, seeking judicial review, pursuant to the Administrative Procedure Act (the "APA"), of a Department of Agriculture ruling that she was obligated to return an overpayment received for tobacco crop losses.[1] Tyson had first unsuccessfully pursued her contrary contention — namely, that she was entitled to keep the $80,000 overpayment — through the administrative processes of the Department's National Appeals Division. In February 2007, the Division ruled against Tyson, concluding that the Department's regulations required the overpayment to be returned. See Tyson v. Farm Serv. Agency, No. 2006S000823 (Director Review Determination, Feb. 27, 2007) (the "Agency Decision").[2] Thereafter, on December 9, 2008, the district court awarded summary judgment to the Department, upholding the Agency Decision's determination that Tyson had to return the overpayment. See Tyson v. U.S. Dep't of Agric., 589 F. Supp. 2d

---

[1] The APA authorizes judicial review of a final agency decision, providing that any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . ., is entitled to judicial review thereof." 5 U.S.C. § 702.

[2] The Agency Decision is found at J.A. 21-28. (Citations herein to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.)

584 (E.D.N.C. 2008) (the "District Court Decision"). Tyson has appealed the District Court Decision and, as explained below, we affirm.

I.

A.

As the Agency Decision explains, Tyson is a tobacco farmer in Nash County, North Carolina. She owns and operates a complex farming business, where she utilizes multiple fields and farms to produce tobacco. Tyson also serves as vice chairman of the County Committee (the "COC") of the Department of Agriculture's Farm Service Agency (the "FSA") in Nash County. In 2003, excessive rains damaged Tyson's tobacco crop, prompting her to apply to the Nash County FSA (the "County FSA") in 2005 for benefits under the Department's Crop Disaster Program (the "CDP").

Pursuant to the CDP, farmers who suffered certain weather-related losses to their 2003, 2004, or 2005 crops were eligible to apply for CDP benefits for one of the affected years. The CDP provided for a maximum payment of $80,000 to eligible farmers for qualifying lost crops, with the farmer's total recovery — including insurance payments, harvested crops, and CDP benefits — being limited to 95% of what would have been the value of the farmer's undamaged crop. In determining whether to

3

make such a CDP payment, the FSA was authorized to estimate the value of an eligible tobacco farmer's undamaged and harvested tobacco crops, if any, using the county average of tobacco prices during the relevant growing season. Under the then-existing tobacco regulatory system, quota allotments made by the Department of Agriculture dictated the quantity of tobacco a farmer could market in a given year (the "effective quota"). Thus, multiplication of an eligible farmer's effective quota by the average tobacco price for the relevant county would, for CDP purposes, provide the expected value of the farmer's undamaged crop.[3]

During the CDP application period in 2005, a "Fact Sheet" detailing the CDP's requirements was posted at the County FSA Office.[4] The Fact Sheet explained that CDP benefits would be calculated in the same manner as under the 2000 CDP. The Fact Sheet further specified, inter alia, the following:

---

[3] By way of example, if a tobacco farmer's effective quota were 1000 pounds and the average tobacco price for the relevant county were $1.50 per pound, the value of the farmer's undamaged tobacco crop would be $1500. Accordingly, the aggregate value of the farmer's harvested tobacco crop, insurance payments, and CDP benefits could not exceed $1425 — 95% of $1500.

[4] In addition to its posting of the Fact Sheet, the County FSA mailed notifications to potentially eligible farmers in its jurisdiction, alerting them to the CDP and advising them to contact the County FSA for further information regarding the CDP.

> Like the 2001/2002 crop disaster program, crop disaster payments will be reduced, as required by statute, if the sum of the: 1) disaster payment; 2) the net crop insurance indemnity; and 3) the value of the crop harvested exceeds 95 percent of what the value of the crop would have been in the absence of a loss.

J.A. 305. The Fact Sheet's explanation of the CDP benefits comported with the "[l]imitations on payments and other benefits" contained in the then-applicable regulations. More specifically, those regulations provided that

> [n]o producer shall receive disaster benefits under [the CDP] in an amount that exceeds 95 percent of the value of the expected production for the relevant period as determined by [the Commodity Credit Corporation]. The sum of the value of the crop not lost, if any; the disaster payment received under [the CDP]; and any crop insurance payment or payments received . . . for losses to the same crop, cannot exceed 95 percent of what the crop's value would have been if there had been no loss.

7 C.F.R. § 1479.105 (2006).

B.

Tyson applied for CDP benefits in April 2005 through her husband, who had her power of attorney. In May 2005, the County FSA determined that Tyson was entitled to $80,000 in CDP benefits, the maximum payment an eligible farmer could receive. On May 9, 2005, an $80,000 payment was deposited into Tyson's bank account, and the related disbursement statement, sent by the County FSA to Tyson, explained that "[t]he payment

5

information reflected on this transaction statement is for the CDP Program for 2003-2005 crop losses."  J.A. 295.

During spot checks of CDP applications in September 2005, calculation errors were identified in CDP benefits paid to thirty tobacco farmers in Nash County.  Over the ensuing months, the FSA State Committee (the "STC"), the County FSA, and the COC conducted investigations and assessed whether the Department of Agriculture's ninety-day "Finality Rule" protected overpaid Nash County tobacco farmers from returning their overpayments.[5]  The Finality Rule, as relevant here, provides that

> [a] determination by a State or county FSA committee . . . becomes final and binding 90 days from the date the application for benefits has been filed . . . unless . . . [t]he participant had reason to know that the determination was erroneous.

7 C.F.R. § 718.306(a)(4).  "Reason to know" is defined by the FSA as "knowledge by way of a rule or provision that a person could or should have known such as, but not limited to, the following:" "statutes or public laws"; "published regulations"; "program applications"; "notices the person receives"; "and newsletters."  J.A. 289 (FSA Handbook); see also Agency Decision 2 (citing FSA Handbook).

---

[5] The STC and COC administered the CDP, under the general supervision of the Executive Vice President of the Commodity Credit Corporation.  See 7 C.F.R. § 1479.101 (2006).

6

Ultimately, the FSA determined that certain tobacco farmers, who had received particularly excessive CDP overpayments, had "reason to know" that such payments were made in error, thus precluding application of the Finality Rule. More specifically, the FSA determined that a tobacco farmer had "reason to know" of such an overpayment if (1) the sum of the farmer's harvested crop and insurance payments equaled at least 92% of the market value of the farmer's effective quota, and (2) the sum of the harvested crop, insurance payments, and CDP benefits equaled or exceeded 110% of the market value of the farmer's effective quota. Accordingly, the recipient Nash County tobacco farmers who satisfied both criteria were not shielded by the Finality Rule from returning their CDP overpayments. Thus, in 2006, the FSA directed Tyson and eleven other Nash County tobacco farmers to return overpaid CDP benefits to the County FSA.[6]

---

[6] In 2003, Tyson's effective quota was 327,858 pounds, and the Nash County seasonal average price for tobacco was $1.85 per pound. Hence, absent weather-related losses, Tyson could have earned $606,537 for her 2003 tobacco crop. With her weather-related crop losses in 2003, Tyson produced 201,222 pounds of tobacco, valued at $372,261, and received $263,083 in insurance payments, for an aggregate recovery of $635,344. Even prior to the CDP overpayment, Tyson had received nearly $29,000 more than she could have earned from selling her entire 2003 effective quota. Nevertheless, the $80,000 CDP payment increased her aggregate compensation to $715,344, giving her a windfall in excess of $108,000.

7

C.

Thereafter, Tyson sought administrative review of the FSA's adverse determination through the Department of Agriculture's National Appeals Division. In December 2006, a Division Hearing Officer overturned the FSA's ruling, concluding instead that the Finality Rule protected Tyson from having to return the $80,000 overpayment. As it was entitled to do, however, the FSA promptly pursued further administrative review, and, by way of the February 2007 Agency Decision, the Division Director reversed the Hearing Officer.

In ruling against Tyson, the Agency Decision explained that, under the Finality Rule, "constructive reason to know [is] knowledge by way of a rule or provision that a person could or should have known (including published regulations or press releases/newsletters)." Agency Decision 2 (citing FSA Handbook). The Agency Decision further emphasized that, although Finality Rule protection adheres when incorrect yields or calculations are used, it does not apply when payments simply exceed the regulatory limits, because tobacco farmers should be aware of such limitations. Id. Focusing on the magnitude of the discrepancy here — and recognizing Tyson's extensive experience in FSA activities (including her position as vice chairman of her COC) — the Agency Decision concluded that Tyson had "reason to know" that she had received an erroneous

8

overpayment, thereby rendering the Finality Rule inapplicable. Id. at 3, 7. More specifically, the Agency Decision determined that the magnitude of Tyson's overpayment placed her on notice of its erroneous nature, observing that it is "unrefuted" that "[Tyson] received total compensation that substantially exceeded the market value of her entire tobacco quota," even before applying for CDP benefits. Id. at 7. The Agency Decision thus concluded that

> [Tyson] had all the facts and figures needed to calculate that she had received as compensation for her poor crop over $108,000 more than she would otherwise receive if her crop was a success. Although [Tyson] was not expected to identify [County FSA] errors in the yields used to calculate benefits, she was reasonably expected to question receipt of over $108,000 in additional compensation she was not otherwise eligible to receive.

Id.

In April 2007, after the Division Director denied her request for reconsideration, Tyson sought judicial review of the Agency Decision in the district court.[7] In March 2008, the parties filed cross-motions for summary judgment. By the District Court Decision of December 9, 2008, summary judgment was awarded to the Department of Agriculture, upholding the

---

[7] Pursuant to 7 U.S.C. § 6999, "[a] final determination of the [National Appeals] Division shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with [the APA]."

Agency Decision's ruling that the Finality Rule did not apply and that Tyson was obligated to return the $80,000 overpayment. More specifically, as the court explained:

> Evidence in the administrative record demonstrates a substantial evidentiary basis to find [Tyson] had "reason to know" that the CDP payment for her tobacco crop losses was erroneous. Based on the evidence, [Tyson] could have calculated the total effective income quota for the 2003 tobacco crop and compared that figure to the total amount [Tyson] received from the sale of the 2003 tobacco crop and the insurance recovery in order to determine her eligibility for CDP payments. [Tyson's] farm records provide that [Tyson's] actual 2003 income exceeded her effective income quota for the 2003 tobacco crop. Moreover, the fact sheet explaining CDP eligibility clearly provided the payment calculation required to be eligible for the program. In addition, [Tyson's] personal extensive experience in FSA farm programs and on the FSA county committee at the time of her application further supports that [Tyson] should have known the eligibility requirements for the program. In reviewing the record, a substantial basis for the conclusion the agency reached exists and no clear error of judgment has occurred.

Tyson, 589 F. Supp. 2d at 587.

On January 5, 2009, Tyson filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.


II.

We review de novo a district court's award of summary judgment. See Holly Hill Farm Corp. v. United States, 447 F.3d 258, 262 (4th Cir. 2006). Pursuant to the APA, however, our review of the Agency Decision is — as was the district court's

10

— limited to determining whether the agency's findings and conclusions were arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, or unsupported by substantial evidence. See 5 U.S.C. § 706.[8] Such a standard of review is obviously quite narrow, and we are not entitled to substitute our judgment for that of the agency. See Holly Hill, 447 F.3d at 263 (explaining that courts "perform only the limited, albeit important, task of reviewing agency action to determine whether the agency . . . has committed a clear error of judgment" (internal quotation marks omitted)).

### III.

### A.

On appeal, Tyson primarily contends that the Agency Decision is unsupported by substantial evidence.[9] In pursuing

---

[8] In relevant part, the APA, as codified, provides that a reviewing court shall set aside an agency action only when it is found to be:

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or]

&#42; &#42; &#42;

(E) unsupported by substantial evidence . . . .

5 U.S.C. § 706(2).

[9] Additionally, Tyson asserts that upholding the agency's determination would "nullify the Finality Rule" by, essentially, (Continued)

this contention, Tyson emphasizes three points.  First, she asserts that "one's [effective] quota — and by extension one's supposed knowledge of that quota — had nothing whatsoever to do with any presumed knowledge of a CDP overpayment."  Br. of Appellant 17.  Second, she contends that the Fact Sheet was ambiguous and that, in any event, there was no evidence that she ever saw it.  Third, she maintains that her experience with FSA programs and her position as vice chairman of the COC simply had no "nexus" to her knowledge of CDP eligibility requirements. See id. at 25.

We need not tarry on Tyson's first point, as she failed to make her quota-based contention to the district court, thereby precluding appellate review thereof.  See Holland v. Big River Minerals Corp., 181 F.3d 597, 605 (4th Cir. 1999) ("Generally, issues that were not raised in the district court will not be addressed on appeal.").[10]  Her second point is likewise

_____

precluding application of the Rule any time there was an overpayment.  See Br. of Appellant 28-30.  To recognize the flaw in this contention, we need look no further than the fact that eighteen of the thirty Nash County tobacco farmers who received CDP overpayments were protected by the Finality Rule (even under the FSA's standard for "reason to know").

[10] Even had Tyson presented her quota-based contention to the district court, it would have been rejected as meritless. In 2003, tobacco was highly regulated and was controlled by effective quotas, as Tyson's farm records confirm.  See J.A. 144-47; id. at 237-45; see also id. at 307-20 (affidavit of (Continued)

12

unavailing, for the Fact Sheet clearly explains the statutory cap on CDP benefits and was prominently displayed in the County FSA office, where the CDP applications were submitted. See J.A. 297, 305. Moreover, and dispositive on Tyson's third point, the COC administered the CDP. See 7 C.F.R. § 1479.101 (2006); see also J.A. 260-66. Accordingly, it would be extremely difficult, in the first instance, for us to accept Tyson's claim of ignorance. And it would be inappropriate, under the applicable standard of review, for this Court to overturn the Agency Decision's determination that Tyson "had constructive knowledge of the [CDP's] rules," see Agency Decision 7.[11]

---

Miles Davis, N.C. FSA Agricultural Farm Program Specialist). Accordingly, Tyson cannot contend that such quotas are irrelevant to the objective determination of whether a tobacco farmer had "reason to know" of a CDP overpayment. Further, the assertion that effective quotas are irrelevant to the "reason to know" analysis — and that such an analysis should be focused on tobacco yields — contradicts Tyson's initial claim in the administrative process that she compared the CDP benefits she received to her insurance payment, see id. at 363, and not, as she now attempts to assert, to her 2002 tobacco yield.

[11] To the extent that Tyson contends that the FSA acted arbitrarily and capriciously in determining which tobacco farmers had "reason to know" of the overpayments, we also reject this contention. In short, the Agency Decision did not err in ruling that the FSA had applied a reasonable standard in determining which tobacco farmers had "reason to know" that their overpayments were erroneous.

13

B.

Having carefully assessed the record, we are, like the district court, unable to say that the Agency Decision was arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence. Simply put, we are unable to find fault with the Agency Decision's conclusion that Tyson, an experienced tobacco farmer and COC officer, had constructive knowledge of the applicable regulatory limitations and should have known that she had received a substantial overpayment. We therefore uphold the district court's affirmance of the Agency Decision, and we are content to do so on the basis of the court's reasoning. See Tyson, 589 F. Supp. 2d 584.

IV.

Pursuant to the foregoing, we affirm the district court's award of summary judgment to the Department of Agriculture.

AFFIRMED