**LAST BEST BEEF, LLC, Plaintiff,**

v.

**Jon DUDAS, et al., Defendants.**

**No. CIV.A. 1:06–399.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 27, 2006.

Seyfarth Shaw LLP by David M. Monachino, Eddy Salcedo and Alexander X. Jackins, New York City, for Plaintiff.

Office of the United States Attorney, by Dennis C. Barghaan, Jr., Richmond, VA, for Defendants.

## MEMORANDUM ORDER

LEE, District Judge.

THIS MATTER is before the Court on Plaintiff Last Best Beef, LLC'S ("LBB") Motion for Summary Judgment. This case concerns LBB's eight (8) trademark applications for the phrase "Last Best Place." These applications were suspended by the United States Patent and Trademark Office ("USPTO") after the President signed an appropriations bill on November 22, 2005, which included language prohibiting the registration of any trademark of the phrase "The Last Best Place." The issues before the Court are (1) whether Section 206 of the appropriations bill, which contains the prohibitive language, improperly circumvents the Lanham Act and, therefore, is invalid legislation, and (2) whether USPTO actions taken in response to the enactment of Section 206 demonstrate "a clear error in judgment." The Court grants summary judgment in favor of Plaintiff with respect to Counts I through IV because (1) Congress failed to explicitly suspend provisions of the Lanham Act with respect to the phrase "Last Best Place," and (2) the actions taken by the USPTO in response to the enactment of Section 206 demonstrate a "clear error in judgment" given that Section 206 does not authorize the cancellation, suspension, or "freezing" of pending trademark applications or Notices of Allowance. In the absence of manifest congressional intent, the Court is unwilling to infer from a single sentence in an appropriations bill that Congress intended to undermine or bypass well-established provisions of trademark law in order to protect a single phrase from commercial control.

### I. BACKGROUND

LBB is a Nevada-based limited liability company. (Compl. ¶ 7; Answer ¶ 7.) Defendant Jon W. Dudas is the Under Secretary of Commerce for Intellectual Property and the Director of the USPTO, and is responsible for making rules and regulations for the conduct of proceedings before the USPTO. (Compl. ¶ 8; Answer ¶ 8.) Defendant Lynne G. Beresford is the Commissioner for Trademarks for the United States, and pursuant to 35 U.S.C. § 3(b)(2)(A), et. seq., is the chief operating officer for the operations of the USPTO relating to trademarks, and is responsible for the management and direction of all aspects of the activities of the USPTO that affect the administration of trademark operations. (Compl. ¶ 7; Answer ¶ 9.)

LBB was assigned two (2) federally registered trademarks. The first is a trademark for the phrase "The Last Best Place Catalog," issued to registration as United States Trademark Registration Number ("Registration No.") 184356 on July 12, 1994. The second is a trademark for the phrase "The Last Best Place Catalogue Company," issued to registration as Registration No. 1879361 on February 14, 1995. (Compl. ¶ 12; Answer ¶ 12.) The USPTO cancelled Registration No. 1879361 on November 19, 2005, because LBB failed to maintain the trademark by renewing it within ten (10) years of its original registration, as required by 15 U.S.C. § 1059(a), (Def.'s Ex. 3.) Registration No. 184356 remains a federally registered trademark. LBB retains use of the trademark in connection with "retail mail order services featuring products from the state of Montana." (Compl. ¶ 13; Answer ¶ 13.)

Between 2001 and 2004, LBB filed eight (8) additional applications with the USPTO for federal trademark registration of the phrase "The Last Best Place" in connection with a variety of goods and services. (Def.'s Ex. 5–12.) On November 22, 2005, the USPTO issued the applications bearing Serial Numbers 76/355243 and 76/355577

to registration as Registration Nos. 3018188 and 3018189, respectively. (Compl. ¶ 18; Answer ¶ 18.)

As of November 22, 2005, the Montana State Department of Commerce had opposed two (2) of LBB's pending applications, Serial Nos. 78/463753 and 78/463754, before the Trademark Trial and Appeal Board (TTAB) (collectively, the "Oppositions"). (Compl. ¶ 19; Answer ¶ 19.) The Oppositions were based upon the argument that the phrase "Last Best Place" is a primarily geographically descriptive term that identifies the State of Montana, and therefore, is not entitled to registration under the Lanham Act. (Compl. ¶ 20; Answer ¶ 20.) However, the remaining four (4) applications were not opposed. The USPTO issued "Notices of Allowance" for these four (4) applications.[1]

On November 22, 2005, President Bush signed the Science, State, Justice, Commerce, and Related Agencies Appropriations Act of 2006, Pub.L. 109–108, 119 Stat. 2290 (2006) ("the Act"). The Act is one of many fiscal laws passed by Congress to ensure funding for various areas and activities of the federal government. At issue here is Section 206 of the Act, which falls within the section of the Act entitled "General Provisions—Department of Commerce," and provides as follows:

Notwithstanding any other provision of this Act, no funds appropriated under this Act shall be used to register, issue, transfer, or enforce any trademark of the phrase "The Last Best Place." Pub.L. 109–108, 119 Stat. at 2315.

United States Senator Conrad Burns sponsored Amendment 1675 to House of Representatives Bill No. 2562, which ultimately became Section 206 of the Act. (Compl. ¶ 4; Answer ¶ 4.) Senator Burns

publicly stated that the purpose of Section 205 was "to forbid the usage of any federal dollars to trademark the phrase 'Last Best Place.'" Senator Burns publicly alleged that the trademark "'Last Best Place' belongs to the State of Montana." (Compl. ¶ 24; Answer ¶ 24.) The State of Montana does not hold any registration or ownership of the phrase "Last Best Place." (Compl. ¶ 25; Answer ¶ 25.)

On January 3, 2006, the USPTO cancelled the Notices of Allowance with respect to Serial Nos. 76/299658, 76/299659, 76/299660 and 78/148103. (Compl. ¶ 31; Answer ¶ 31.) On January 5, 2006, the USPTO issued a Cancellation Order with respect to Registration No. 3018188, stating in full:

Consistent with the Department of Commerce and Related Agencies Appropriations Act ... Registration No. 3,018,188 issued to the Last Best Beef, LLC on November 22, 2005 for the mark Last Best Place is hereby ordered cancelled.

(Compl. ¶ 33; Answer ¶ 33.)

On January 5, 2006, the USPTO also issued a similar Cancellation Order with respect to Registration No. 3018189. (Compl. ¶ 33; Answer ¶ 33.) The following day, January 6, 2006, the TTAB suspended proceedings with respect to the opposed applications, Serial Nos. 78/463753 and 78/463754. (Def.'s Ex. 11–12.) Finally, on January 18, 2006, the USPTO suspended all action with respect to Serial Nos. 76/299658, 76/299659, 76/299660, 78/148103 until October 1, 2006. (Compl. ¶ 35; Answer ¶ 35.)

The USPTO premised these cancellations and suspensions on its interpretation of Section 206. (Compl. ¶ 40; Answer ¶ 40) The USPTO maintains that these actions were appropriate in light of the

---

1. A Notice of Allowance is a preliminary approval of trademark registration, pending proof of use of the trademark in commerce. 15 U.S.C.A. § 1051(d)(1) (West 2005).

prohibitions contained in Section 206. (Compl. ¶ 51, Answer ¶ 51.)

## II. DISCUSSION

### A. Standard of Review

Under Rule 56(c), the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(*o*). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute as to a material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "material fact" is a fact that might affect the outcome of a party's case. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *JKC Holding Co. v. Wash. Sports Ventures, Inc.,* 264 F.3d 459, 465 (4th Cir.2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Hooven–Lewis v. Caldera,* 249 F.3d 259, 265 (4th Cir.2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. "Rule 56(e) requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Analysis

#### 1. Section 206 improperly circumvents the Lanham Act

■ The Court grants summary judgment in favor of the Plaintiff with respect to Counts I through IV because Congress failed to explicitly suspend provisions of the Lanham Act[2] with respect to the phrase "Last Best Place." Section 206 neither mentions the Lanham Act nor provides for any procedure or process to replace that which is contained in the Lanham Act. Thus, a plain reading of Section 206 does not indicate that the section modifies the Lanham Act, or replaces any of its provisions. In the absence of manifest congressional intent, the Court concludes that Section 206 improperly circumvents the Lanham Act and, therefore, is invalid legislation.

The Fourth Circuit has observed that "according to its own rules, Congress is not supposed to use appropriations measures as vehicles for the amendment of general laws." *Strawser v. Atkins,* 290 F.3d 720, 733 (4th Cir.2002). However, the Supreme Court has ruled that despite legislative rules to the contrary, if Congress wishes to suspend or repeal current law it can "accomplish its purpose by an amendment to an appropriation bill or oth-

**2.** 15 U.S.C. §§ 1051–1127 (2002).

erwise." *United States v. Dickerson,* 310 U.S. 554, 560, 60 S.Ct. 1034, 84 L.Ed. 1356 (1940). The Supreme Court has further ruled that if Congress wants to modify or repeal existing law via appropriations acts, it must do so explicitly. *Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 190–91, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) (emphasis added). *See also United States v. Will,* 449 U.S. 200, 222, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980) ("As a general rule, 'repeals by implication are not favored.' [citation omitted] This rule applies with especial force when the provision advanced as the repealing measure was enacted in an appropriations bill . . . .").

■ The Fourth Circuit has held that repeal by implication will only be found where there is clear legislative intent to support such a repeal. *United States v. Mitchell,* 39 F.3d 465, 472 (4th Cir.1994). A court may find the requisite degree of intent when "(1) the two (2) acts are in irreconcilable conflict, or (2) the later act covers the whole subject of the earlier one and is clearly intended as a substitute." *Id.* (internal citations omitted).

Section 1052 of the Lanham Act provides that "no trademark by which goods of others shall be refused registration on the principal register on account of its nature . . . ." 15 U.S.C. § 1052. The section also enumerates a number of exceptions to this rule, none of which are applicable to the phrase "Last Best Place." Section 206 conflicts with this provision by insisting that any trademark for the phrase "Last Best Place" be refused registration. However, Section 206 fails to explicitly mention any suspension, modification or repeal of Section 1052 of the Lanham Act or even the Lanham Act itself, as required by *Tennessee Valley Authority.*

In *Mitchell,* the Circuit held that irreconcilable conflict between two (2) statutes

is sufficient to express congressional intent to impliedly repeal an earlier statute. However, in the instant case, the government concedes that there has been no implied repeal of the Lanham Act by Section 206. Rather, the government argues, Section 206 only impliedly *suspends certain provisions* of the Lanham with respect to a single phrase. However, any inquiry as to which provisions of the Lanham Act are suspended, or how those provisions are to be replaced is unavailing because Section 206 says nothing at all about the Lanham Act or its provisions. While irreconcilable conflict may be sufficient to demonstrate congressional intent to repeal a statute, it does little, in itself, to outline the manner in which a single sentence might suspend particular provisions of an earlier statute without mentioning those provision or providing an agency with any alternatives for the guidelines contained therein. Accordingly, the Court finds that the conflict between Section 206 and Section 1052 is insufficient to demonstrate manifest congressional intent to suspend numerous, interdependent provisions of the Lanham Act with respect to one phrase, and to tamper with a well-established area of American law. If Congress wished to transform the entire body of trademark law with respect to one phrase it could have amended the Lanham Act by adding a prohibition on that phrase to the list of exceptions in Section 1052 of the Lanham Act. The Court finds that one sentence in an appropriations bill, which fails to mention the Lanham Act explicitly or to provide any alternative guidelines that replace those of the Lanham Act, is insufficient to override the numerous, interdependent provisions of that Act.

*2. Importance of the Lanham Act and the Implied effects of Section 206*

The Court finds it significant that neither the government nor LBB can point to

another instance in which Congress has suspended trademark law with respect to a single phrase. The Court notes that, at present, the Lanham Act defines the scope of a trademark, the process by which a federal registration can be obtained, and common law penalties for trademark infringement. In the absence of any precedent, the Court is not inclined to open the door to a litany of whimsical exceptions to the Lanham Act like those that riddle the Tax Code. More specifically, the Court notes three (3) reasons that cut against this practice of carving out narrow trademark monopolies for special interests through one phrase buried in an appropriations bill.

*a. Potential to destabilize a business's ability to brand its products and services.*

The Court finds that allowing the entire Lanham Act to be circumvented by one single phrase buried in an appropriations bill can potentially destabilize a business's ability to brand its products and services. A business's trademark performs four (4) functions that deserve protection in the courts. First, a trademark "identifi[es] one seller's goods and distinguish[es] them from goods sold by others." *See* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 3:2 (4th ed.2006). Second, "to signify that all goods bearing the trademark come from or are controlled by a single . . . source." *Id.* Third, to signify that all goods bearing the trademark are of an equal level of quality. *Id.* Fourth, it serves as a prime instrument in advertising and selling the goods. *Id.* In addition to these four (4) functions, a business's trademark is the "objective symbol of the good will that a business has built up." *Id. See also* S.Rep. No. 1333, 79th Cong., 2d Sess., 3 (1946) (reporting that "[t]he purpose underlying any [trademark] statute is . . . to protect the public so it may be confident that, in purchasing a product bearing a particular" trademark it knows and to protect "the owner of a [trademark who] has spent energy, time, and money in presenting to the public the product"—"he is protected in his investment from its misappropriation by pirates and cheats.") If consumer satisfaction and preference are labeled "good will," then a trademark is the symbol by which the world can identify that good will. *Id.* This goodwill is often the cornerstone of the owner's business. *See* American Intellectual Property Law Association ("AIPLA"), *An Overview of Intellectual Property: What is a Patent, a Trademark, and a Copyright?*, at Section II, Trademarks *available at* http://www.aipla.org/Content/ContentGroups/Publicationsl/Publications_available_for_viewingl/What_is_a_Patent_and_Trademark.htm (last visited September 12, 2006). Moreover, trademarks are essential in a competitive economy based on free market principles. J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 3:5 (teaching that trademarks are essential in a competitive economy and that "[b]oth consumer and producer would fare badly in a world without the distinguishing function served by trademarks"). *Id. See also Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 782, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (In promulgating the trademark statute, Congress hoped "to secure to the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not. This is the end to which this bill is directed."); Business.gov: The Official Business Link to the United States Government, Plain English Guide to Trademarks, *available at* http://www.business.gov/topics/business_laws/copyright_patents/peg_trademarks.html (last visited September 12, 2006) (announcing that "[f]or businesses, trademarks are

one of the most valuable forms of intellectual property").

Here, Plaintiff registered his first trademark over ten (10) years ago, in 1994, and his second trademark in 1995. He undoubtedly gained some modicum of reputation and good will in conjunction with those trademarks. More importantly, consumers most likely associated that trademark with his business—retail mail order services featuring products from the state of Montana. Generally, most businesses plan their potential rate of growth on the business's ability to be recognized by the consumer and get its product to the consumer. *See generally* United States Small Business Association, *Essential Elements of a Good Business Plan For Growing Companies*, SBA.GOV, *available at* http://www.sba.gov/managing/strategicplan/guide.html# strategies (stating that "customers are the lifeblood of your business" and usually some combination of the following works the best in gaining and keeping customers: "promotions; advertising; … printed materials such as brochures, catalogues, flyers, etc"). A key to this process is the ability for LBB to brand its products and services.[3] *See* American Marketing Association, Overview of Trademark Law in Marketing, MARKETINGPOWER.COM, *available at* http://www.marketingpower.com/content20144.php ("For a brand to have value, it must become a trademark so that the owner holds a monopoly over a symbol that the public could otherwise use.")

Allowing the entire Lanham Act to be circumvented by a single phrase buried in an appropriations bill could prevent a business owner from reaping the good will associated with that trademark and thereby, destabilize that business's ability to grow and frustrate the owners of the business from planning for future growth.

The Court finds that Section 206 does not repeal the Lanham Act. The single phrase in Section 206, relating to the trademark, if read expansively would be a breathtaking change in existing trademark law.

*b. Potential to turn the Trademark Procedures into a statute full of holes and exceptions.*

The Court finds that Section 206, if interpreted broadly, invites future destabilization of intellectual property at the whim of special interests outside the existing structure of trademark law. Other states and special interests groups may seek to carve out their particular slogans, thereby creating a statute full of holes and inconsistencies. Here, Senator Burns publicly alleged that the trademark " 'Last Best Place' belongs to the State of Montana," in support of his belief that no other entity should be able to use that trademark. (Compl. ¶ 24; Answer ¶ 24.) Today it is Montana making a claim to a phrase outside the spectrum of existing trademark law. Tomorrow, it will be "Virginia is for Lovers," or any of the following:

Alabama Share The Wonder; (formerly) The Heart of Dixie;

Alaska Beyond Your Dreams, Within Your Reach

Arizona The Grand Canyon State; also on its *license plate*

Arkansas The Natural State; also on its *license plate*

Formerly Land of Opportunity

California Find Yourself Here

Colorado Enter a Higher State

---

3. Branding differentiates a company from its competition by developing a relationship with customers for long-term loyalty and measurable increases in margin and revenue. *See* American Marketing Association, Branding, MARKETINGPOWER.COM, *available at* http://www.marketingpower.com/content24345.php.

Formerly Fresh Air and Fond Memories Served Daily

Connecticut   Full of Surprises

Delaware   It's Good Being First

Wash., D.C.   The American Experience; Taxation Without Representation; also on its *license plate*

Florida   Visit Florida

Georgia   *Georgia on My Mind;* also its *state song*

Hawaii   The Islands of *Aloha*

Idaho   Great *Potatoes.* Tasty Destinations.

(Formerly) Famous Potatoes; also on its *license plate*

Illinois   Mile After Magnificent Mile; Right Here. Right Now.

Iowa   Life Changing; Fields of Opportunity

Indiana   Restart Your Engines, (formerly) Enjoy Indiana

Kansas   Kansas, as big as you think, (formerly) Simply Wonderful

Kentucky   Unbridled Spirit (formerly, It's That Friendly); also on its *license plate*

Louisiana   Come as you are. Leave Different.

Maine   It Must Be Maine; The Way Life Should Be

(Formerly) Vacationland; also on its *license plate*

Maryland   (formerly) More Than You Can Imagine

Massachusetts   Make It Yours The Spirit of America; on its *license plate*

Michigan   Great Lakes, Great Times; More To See.

(Formerly) Water/Winter Wonderland; previously on its *license plate*

Minnesota   Explore Minnesota

Mississippi   Feels Like Coming Home, "The South's Warmest Welcome"

Missouri   Where the Rivers Run

Nebraska   (formerly) *The Good Life* which inspired, *The Good Life (band),* Possibilities...Endless

Nevada   Wide Open

New Hampshire   Live Free or Die

New Jersey   Come See For Yourself

New Mexico   Land of Enchantment; also on its *license plate*

New York   *I Love New York;* also its *state song,* "The Empire State" (on highway welcome signs)

North Carolina   A Better Place to Be; Raise Up

North Dakota   Legendary

Ohio   So Much to Discover

Oklahoma   Native America; also on its *license plate*

Oregon   We Love Dreamers; Things Look Different Here (1987–2003); Pacific Wonderland (on its *license plate* 1959–1964)

Pennsylvania   State of Independence, (formerly) Memories Last a Lifetime, You've Got a Friend in Pennsylvania

Rhode Island   Unwind; Hope

South Carolina   Smiling Faces. Beautiful Places. Also on one of its two base *license plates.*

South Dakota   Great Faces. Great Places.

Tennessee   The Stage Is Set For You; (formerly) Sounds Good to Me (formerly) Follow Me To Tennessee; also on its *license plate*

Texas   It's Like a Whole Other Country (this is used only in domestic advertising) Formerly: Don't Mess With Texas

Utah   Life Elevated Formerly: Greatest Snow on Earth and Utah! Where Ideas Connect (the former and the 'Utah!' part of the latter both on license plates)

Vermont  Vermont, naturally

Washington  SayWA!; (formerly) Experience Washington; The Evergreen State;

West Virginia  Open for Business; (formerly) Wild and Wonderful; also on its license plate as Wild, Wonderful; (previous to that) Almost Heaven

Wisconsin  Stay Just a Little Bit. Longer

Wyoming  Like No Place on Earth

See List of U.S. Slogans, Answers.com available at http://www.answers.com/topic/list-of-u-s-state-slogans (last visited September 12, 2006). The Court notes that this list exemplifies the potential slogans that take advantage of the same statutory phrase at issue here. It is the Court's concern that if this were the case, the Lanham Act would be riddled with so many holes and exceptions that a business would find it as difficult navigate as our voluminous United States' tax code. These matters are best resolved within the existing framework of trademark law.

The Court finds that Congress could not have intended to repeal the Lanham Act in a way that invites other states and special interests groups to carve out special Congressional trademarks for their particular slogans, thereby creating a whimsical trademark statute full of holes and inconsistencies.

*c.  No steadfast procedure and protection afforded by the Lanham Act*

The result of applying Section 206, as the PTO has in this case, is that a trademark application for a certain phrase is stranded without any of the procedure and protection afforded by the Lanham Act. In the absence of clear guidelines as to how to properly deal with trademark applications for the phrase, the USPTO decided to improvise a system of cancellation and

suspension that is not provided for in the Lanham Act or the Trademark Manual.

### i.  No right to appeal

First, Section 206 makes no provision for a right to appeal. Generally, an applicant for trademark registration may appeal to the TTAB upon a final refusal of the Examiner to register a trademark. T.M.R.P. 2.141. Under section 206, the USPTO has refused to register the phrase "Last Best Place" without affording LBB any opportunity to appeal that decision. This action suggests that the USPTO reads Section 206, as a singling out LBB as the only trademark applicant in America with no right to appeal a trademark decision simply because LBB attempting to register the phrase "Last Best Place."

### ii.  Power of cancellation

Second, Section 206 does not expressly authorize the "cancellation" of any trademark application or "Notice of Allowance." Section 1064 of the Lanham Act controls the filing of a petition to cancel a registered trademark. 15 U.S.C. § 1064. There is nothing in Section 206 that empowers the USPTO to cancel or otherwise suspend a pending trademark application. Nonetheless, the USPTO has either cancelled or suspended all of LBB's pending trademark applications citing the restriction placed on it by Section 206. This action suggests the USPTO has interpreted Section 206 to implicitly grant them the power to cancel pending trademark applications of the phrase "Last East Place."

### iii.  Power of "suspension"

Third, Section 206 makes no provision for the "suspension" of any trademark application. Likewise there is no provision in the Lanham Act that allows the USPTO to suspend a trademark application. Nonetheless, the USPTO has "suspended"

four (4) of LBB's pending trademark applications. This action suggests that the USPTO has interpreted Section 206 to create a new procedure, as well as a new term in the trademark lexicon, that allows the USPTO to "suspend" certain applications until the statute prohibiting a particular registration expires.

The government's interpretation of Section 206, thus, asks the Court first, to imply that essential aspects of the trademark system—the right to register a trademark, 15 U.S.C. § 1052, the right to appeal a refusal of the USPTO to register a trademark, T.M.R.P. 2.14—have been suspended with respect to the phrase "Last Best Place," and second, to imply new authority for the USPTO to take a number of actions with respect to that phrase that are neither permitted by the Lanham Act nor mandated by the Trademark Manual. The Court is unwilling to imply so much power from a single sentence in an appropriations bill that neither mentions the Lanham Act nor provides any alternative for the provisions contained therein. In explaining the presumption against implied repeal, the Fourth Circuit has noted "[the rationale] is not that Congress is unlikely to change the law … but rather, that Congress legislate[s] with knowledge of former related statutes, and will expressly designate the provisions whose application it wishes to suspend, rather than leave that consequence to the uncertainties of implication compounded by the vagaries of judicial construction." *Mitchell*, 39 F.3d at 472.

If Congress intended to transform trademark law as we know it and amend the trademark process for pending applications, then Section 206 is insufficient legislation to accomplish that purpose, to say nothing of the concerns such action raises for anyone who holds a trademark. There is a well-established process in place in this country for the registration and protection of trademarks.

The Lanham Act is the unified system for trademark registration and protection of intellectual property. Within the trademark process there are a number of avenues Congress could have taken to transform trademark law and to adopt a form of Congressionally issued trademarks. Congress could have amended or repealed the Lanham Act. Montana has a right to oppose the pending applications on the grounds that "Last Best Place" is primarily a geographic descriptive term. Alternatively, Congress can draft Section 206 with a clear statement of intent to suspend provisions of the Lanham Act and set forth guidelines to replace those contained in the Lanham Act. As it stands, the Court is unwilling to infer from Section 206 that Congress intended to undermine well-established provisions of trademark law in order to protect a single phrase from commercial control. The Court notes that Section 206 does not grant a trademark to the state of Montana.

Thus, the Court grants summary judgment in favor of Plaintiff with respect to Counts I through IV because Congress failed to explicitly suspend provisions of the Lanham Act with respect to the phrase "Last Best Place." In the absence of manifest congressional intent, the Court concludes that Section 206 improperly circumvents the Lanham Act and, therefore, is invalid legislation.

*3. The USPTO committed a "clear error in judgment" by canceling Registration Nos. 76/355243 and 76/355577.*

■ The Court grants summary judgment in favor of Plaintiff with respect to Count I, Declaratory Judgment, and II, Mandatory Injunction, because the actions taken by the USPTO regarding LBB's trademark applications for the phrase "Last Best Place" demonstrate a clear er-

ror of judgment for two (2) reasons: Registration Nos. 3018188 and 3018189 were properly registered and Section 206 does not give the USPTO the authority to cancel pending trademark applications. Section 702 of the Administrative Procedure Act ("APA") provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof," so long as the aggrieved party does not seek "money damages." 5 U.S.C. § 702. Under the APA, a reviewing court shall hold unlawful and set aside agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). The Fourth Circuit has observed that, in determining whether agency action violates 706(2)(A), courts "perform only the limited, albeit important, task of reviewing agency action to determine whether the agency conformed with controlling statutes" and whether the agency has committed "a clear error of judgment." *Holly Hill Farm Corp. v. United States*, 447 F.3d 258, 263 (4th Cir.2006). The standard of review is a narrow one. "The Court is not empowered to substitute its judgment for that of the agency." *Id.* (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)).

First, despite the prohibition contained in Section 206, Registration Nos. 3018188 and 3018189 were properly registered under the Section 1052 of the Lanham Act.

Second, Section 206 does not give the USPTO the authority to cancel pending trademark applications. Section 206 itself does not authorize the "cancellation" of any trademark application. Generally, Section 1064 of the Lanham Act controls the filing of a petition to cancel a regis-

tered trademark. 15 U.S.C. § 1064. There is nothing in Section 206 that empowers the USPTO to cancel a pending trademark application. Accordingly, even if the USPTO decided that any registration of the phrase "Last Best Place" was improper on November 22, 2005, it still did not have the authority to *cancel* the trademark applications supporting the Registration Numbers that were issued that day. The effect of this action is that Plaintiff's time and money spent during the trademark application process is wasted, and they are given no opportunity to appeal the decision to the TTAB. The USPTO has made no indication that they intend to reinstate the trademark applications supporting cancelled Registration Nos. 3018188 and 3018189. As a result, LBB's good faith effort to register a trademark was nullified even after it had already effectively completed the application process. There is no basis for this action in Section 206 or existing trademark law. The USPTO's decision to cancel Registration Nos. 3018188 and 3018189 was thus arbitrary and capricious and demonstrates a "clear error in judgment."

For the foregoing reasons, the Court finds that the USPTO's decision to cancel the trademark application underlying Registration Nos. 3018188 and 3018189 without any express authority to do so was a "clear error in judgment." The Court orders the USPTO to reinstate these trademark applications, Serial Nos. 76/355577 and 76/355243 and to process these applications accordingly under the established provisions of the Lanham Act and the Trademark Manual.

*4. The USPTO committed a "clear error in judgment" by canceling LBB's Notices of Allowance and suspending the underlying trademark applications.*

■ The Court grants summary judgment in favor of the Plaintiff with respect

to Count III, Declaratory Judgment, and Count IV, Mandatory Injunction, because the actions taken by the USPTO regarding LBB's trademark applications for the phrase "Last Best Place" demonstrate a "clear error in judgment". Neither Section 206 nor the Lanham Act give the USPTO authority to cancel the Notices of Allowance issued for Serial Numbers 76/299658, 76/299659, 76/29960 and 78/143103, and suspend the underlying trademark applications. These actions were improvised by the USPTO in response to Section 206 and, as such, they amount to an arbitrary abuse of discretion.

A Notice of Allowance indicates that an application for federal trademark registration has been preliminarily approved, but cannot formally be registered until the applicant submits a verified statement indicating that the trademark is in use in commerce and specifying the date of the applicant's first use of the trademark. 15 U.S.C. § 1051(d)(1). Upon the applicant's submission of this statement and subject to an examination of the statement, "the mark shall be registered in the Patent and Trademark Office." *Id.* Thus, the issuance of a Notice of Allowance sets into motion a process by which a trademark applicant takes initiative to use their trademark in commerce with the expectation that upon their submission to the USPTO of a statement indicating that the trademark is in use, and subject only to an examination of the statement itself, "the mark shall be registered in the Patent and Trademark Office." 15 U.S.C. § 1051(d)(1).

There is nothing in either Section 206 or the Lanham Act that allows the USPTO to cancel a Notice of Allowance and suspend pending trademark applications. The government argues that, in reality, it has only "frozen" these applications. The USPTO has thus improvised a new term in the lexicon of trademark law and has derived

new authority, only on the basis of the enactment of Section 206, to "freeze" pending trademark applications. This action by the USPTO highlights the inadequacy of Section 206 as valid legislation. Section 206 prohibits registration of the phrase "Last Best Place" but it fails to specify or provide any insight as to how the USPTO should defer, dismiss, or suspend any applications currently pending for registration of that phrase. Furthermore, Section 206 does not grant the USPTO any rule-making authority with respect to the phrase. Nonetheless, the USPTO persisted in a series of actions, canceling trademark applications, canceling Notices of Allowances, and finally suspending or "freezing" other pending applications, despite having no clear mandate to do so. The USPTO, thus, committed a "clear error in judgment" by improvising a system of cancellation and suspension of pending trademark applications without the legal authority to do so.

The Court grants summary judgment in favor of the Plaintiff with respect to Count III, Declaratory Judgment, and Count IV, Mandatory Injunction, because the actions taken by the USPTO regarding LBB's trademark applications for the phrase "Last Best Place" demonstrate a "clear error in judgment." These actions were improvised by the USPTO in response to Section 206. However neither Section 206 nor existing trademark law gives the USPTO the authority to improvise a system of cancellation and suspension of pending trademark applications. For this reason, and because the Court finds that Section 206 is invalid legislation that does not repeal the Lanham Act, the Court orders the USPTO to reinstate all suspended trademark applications and proceedings for trademarks of the phrase "Last Best Place," including:

Serial Nos.: 76/299658;

76/299659;

76/299660;

78/148103;

78/463753; and

78/463754.

These applications should proceed accordingly under the established provisions of the Lanham Act and the Trademark Manual, unaffected by Section 206.

Plaintiff also argues that Section 206 is unconstitutional. Because the Court finds that Section 206 is invalid legislation for other reasons, it does not reach those arguments. *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 545, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001) (stating that "when there are two reasonable constructions for a statute, yet one raises a constitutional question, the court should prefer the interpretation which avoids the constitutional issue").

### III. CONCLUSION

The Court grants summary judgment in favor of the Plaintiff with respect to Counts I through IV because Congress failed to explicitly suspend provisions of the Lanham Act with respect to the phrase "Last Best Place." The Court also grants summary judgment in favor of the Plaintiff with respect to Counts I through IV because the actions taken by the USPTO regarding LBB's trademark applications for the phrase "Last Best Place" demonstrate a "clear error in judgment." Despite the statement contained in Section 206, Registration Nos. 3018188 and 3018189 were properly registered under the Section 1052 of the Lanham Act. Furthermore, Section 206 does not give the USPTO the authority cancel, suspend or "freeze" pending trademark applications or Notices of Allowance. The USPTO thus improvised a series of actions without any authority to do so. As such, these actions amount to an arbitrary abuse of discretion and a "clear error in judgment."

Accordingly, it is hereby

ORDERED that Plaintiff Last Best Beef LLC's Motion for Summary Judgment, with respect to Counts I through IV, IS GRANTED.

The Clerk is directed to forward a copy of this Order to Counsel.