**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1420

M.D. RUSSELL CONSTRUCTION, INC.,

        Plaintiff – Appellant,

   v.

CONSOLIDATED STAFFING, INC.,

        Defendant – Appellee,

   and

VERLIANCE, INC., f/k/a Altus Global Recovery, Inc., d/b/a Altus Global Trade Solutions; ALTUS RECEIVABLES MANAGEMENT, INC., f/k/a Altus GTS Inc., d/b/a Altus Global Trade Solutions,

        Defendants.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  Terrence W. Boyle, District Judge.  (7:19-cv-00221-BO)

Argued:  October 26, 2023          Decided:  December 20, 2023

Before GREGORY and AGEE, Circuit Judges, and Robert S. BALLOU, United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge Agee wrote the opinion in which Judge Gregory and Judge Ballou joined.

**ARGUED:** Matthew William Buckmiller, BUCKMILLER, BOYETTE & FROST, PLLC, Raleigh, North Carolina, for Appellant.  Philip Andrew Hinson, LEWIS BRISBOIS BISGAARD & SMITH, Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Joseph Z. Frost, BUCKMILLER, BOYETTE & FROST, PLLC, Raleigh, North Carolina, for Appellant.  Kevin V. Parsons, LEWIS BRISBOIS BISGAARD & SMITH LLP, Charlotte, North Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

AGEE, Circuit Judge:

M.D. Russell Construction, Inc. ("Contractor") appeals the district court's grant of summary judgment to Consolidated Staffing, Inc. ("Staffing Agency") on Contractor's claims and Staffing Agency's counterclaims arising from a staffing contract dispute. Contractor argues that the district court erred in its choice-of-law analysis and in its application of state law to the claims. For the reasons stated below, we reject Contractor's contentions and affirm the district court.

I.

Contractor is a construction company owned by Michael Russell and headquartered in Virginia. Staffing Agency is a Tennessee company that provides temporary labor and staffing services. Both companies operate in North Carolina.

In 2018, Contractor contacted Staffing Agency to discuss Staffing Agency's provision of temporary employees to assist with a hurricane remediation project ("River Landing Project") in North Carolina. On September 24, 2018, Staffing Agency's regional manager, Jennifer Creech, sent Contractor a proposal for providing the requested labor, which listed a bill rate of $17.55 per hour. In addition, Staffing Agency would pay

> all required payroll taxes, certified payroll for government contracts, social security, Medicare contributions, federal and state unemployment taxes, workers' compensation insurance, as well as all administrative costs for recruiting employees, maintaining personnel records, including quarterly reports and year-end W-2 issuance.

J.A. 1475. The proposal included other terms and conditions, including:

- "If the employee does not show the skills needed within two hours of

3

show up time, call and [Staffing Agency] will pull them and pay them the two hours."

- "[Contractor] acknowledges and understands that [Staffing Agency's] invoices are for labor and therefore agrees to pay such invoices upon receipt."

- "If any amount is placed in the hands of an attorney for collection, [Contractor] shall pay attorney fees equal to 20% of the unpaid invoice amount[.]"

- "[Contractor's] signature on the time sheet certifies that the hours shown are correct, that the work was performed to the [Contractor's] satisfaction and authorizes [Staffing Agency] to bill [Contractor] for the hours worked by the named temporary employee. [Contractor] agrees that the representative signing the time sheets is authorized to do so and their signature is binding upon [Contractor][.]"

J.A. 1476 (emphasis omitted). Creech's email explained that the bill rate covered "weekly payroll, recruiting, background and drug testing if required, and work comp." J.A. 972. Russell signed the proposal that same day.

However, the next day, Creech emailed Russell and indicated she needed to increase the hourly pay to attract more laborers. She provided a new proposal that was exactly the same as the September 24 proposal except it provided for a bill rate of $23.50 per hour. Russell again signed it the same day. The parties agree that this September 25 contract (the "Contract") governs their relationship and the current dispute.

Consistent with the Contract, Staffing Agency provided employees to assist with the River Landing Project. Staffing Agency invoiced Contractor for the employees' labor—including time-and-a-half pay for overtime—and Contractor received and promptly paid the invoices. Russell stated in his deposition that he paid the invoices promptly

4

"knowing that at the final billing we would go back through and hash out everything we needed to hash out." J.A. 2753.

However, the parties' relationship began to deteriorate, leading Russell to examine the invoices. He identified three purported concerns with both paid and unpaid invoices: (1) temporary employees Staffing Agency provided for the River Landing Project performed subpar work that Contractor had to redo; (2) certain employee timesheets on which invoices were based were either not signed by Contractor's supervisor or the supervisor's signature was forged; and (3) certain invoices charged Contractor for overtime, but that overtime was supposed to be incorporated into the bill rate. Russell therefore refused to pay Staffing Agency's final batch of invoices for $38,810.37, and he also challenged the invoices he already paid.

After repeated attempts to get Contractor to pay the final invoices, Staffing Agency sued Contractor in state court for breach of contract and unjust enrichment (the "Collections Lawsuit"). Staffing Agency later voluntarily dismissed that Lawsuit.

Contractor then filed a state-court complaint against Staffing Agency, bringing claims for breach of contract, fraud, violations of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), conversion, abuse of process, negligence, negligent misrepresentation, and unjust enrichment. The complaint alleged that Staffing Agency improperly billed Contractor for overtime, temporary employees' defective labor, and unsigned and forged timesheets. Staffing Agency removed the lawsuit to federal court

5

based on diversity jurisdiction and filed a motion to dismiss.[1] The district court denied the motion, and Staffing Agency subsequently counterclaimed for breach of contract and unjust enrichment based on the allegations from the Collections Lawsuit. Staffing Agency sought damages for the unpaid invoices plus 20% of that balance as attorneys' fees.

Contractor moved for summary judgment on Staffing Agency's counterclaims and partial summary judgment on liability for its claims (excluding unjust enrichment). Staffing Agency moved for summary judgment on all the claims and counterclaims. The district court denied Contractor's motion and granted Staffing Agency's motion. *M.D. Russell Constr., Inc. v. Consol. Staffing, Inc.*, No. 7:19-CV-221-BO, 2022 WL 875993 (E.D.N.C. Mar. 23, 2022).

The district court first applied North Carolina choice-of-law rules to determine the substantive law governing the parties' claims. The court concluded that North Carolina law governed the contract claims based on the Contract's place of performance. The court next determined that Virginia law governed Contractor's claims for fraud, UDTPA violations, negligence, and negligent misrepresentation because—applying North Carolina's *lex loci delicti* test[2]— Contractor suffered its alleged injury when it paid Staffing Agency for faulty invoices from its bank accounts in Virginia. The court applied Tennessee law to

---

[1] In its motion-to-dismiss briefing, Staffing Agency relied on substantive North Carolina law to support dismissal and did not raise any choice-of-law issues.

[2] Under the *lex loci delicti* test ("*lex loci*"), North Carolina courts apply the law of the state where the injury occurred. *SciGrip, Inc. v. Osae*, 838 S.E.2d 334, 340 (N.C. 2020). An injury "occurred" "where the last act . . . giving rise to" it took place. *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 698 S.E.2d 719, 724 (N.C. Ct. App. 2010) (citation omitted).

Contractor's conversion claim because Tennessee was the location of Staffing Agency's bank account holding the allegedly converted funds. Finally, the district court relied on the parties' agreement that the abuse-of-process claim was governed by North Carolina law.[3]

Applying the relevant state law, the court found no breach of contract by Staffing Agency because the Contract did not require Staffing Agency to pay overtime or provide skilled workers, and parol evidence could not be used to vary the Contract's terms. The court rejected Contractor's fraud and negligent-misrepresentation claims based on the lack of evidence of Staffing Agency's intent to defraud. The court also granted Staffing Agency summary judgment on Contractor's UDTPA claim because (1) it was brought under a North Carolina statute, but Virginia law applied, and (2) Contractor failed to point to substantial aggravating circumstances surrounding the alleged breach of contract.[4] Finally, the district court granted Staffing Agency summary judgment on its breach-of-contract counterclaim based on Contractor's failure to pay the final invoices. The court awarded Staffing Agency attorneys' fees of 20% of the invoice amount, as provided for in the Contract.

---

[3] The district court did not explicitly determine the law governing the unjust-enrichment claim and counterclaim, but that is irrelevant because the parties don't contest the district court's decision on the merits of those claims on appeal.

[4] The district court also granted summary judgment to Staffing Agency on Contractor's claims for abuse of process and unjust enrichment, but Contractor does not take issue with that decision on appeal. Therefore, we do not discuss those claims below.

Contractor timely appealed. It argues that the district court erred in its choice-of-law analysis and in granting summary judgment to Staffing Agency. This Court has jurisdiction under 28 U.S.C. § 1291.

## II.

This Court reviews a grant of summary judgment *de novo* and applies the same standard as the district court. *Dash v. Mayweather*, 731 F.3d 303, 310 (4th Cir. 2013). We may affirm a grant of summary judgment only when there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. *Id.* at 310–11. And when reviewing a district court's rulings on cross-motions for summary judgment, the Court applies these same principles and reviews the motions separately "on [their] own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (cleaned up).

## III.

Contractor first contends that the district court erred in its application of choice-of-law principles. We disagree.

### A.

Preliminarily, Contractor argues that Staffing Agency waived its contention that another states' law applies by relying on North Carolina law in its motion to dismiss and not raising the choice-of-law issue until the summary-judgment stage. The district court rejected this argument, and we conclude that the district court did not err in so holding.

8

It is undoubtedly true that choice of law can be waived by failure to timely raise the issue. *See, e.g.*, *Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 781 (4th Cir. 2023) (finding waiver when one party "litigated th[e] entire case under the substantive law of North Carolina," including using or assuming that North Carolina law applied in its "answer, motion for summary judgment, trial brief, proposed jury instructions, and post-trial motion"); *Bilancia v. Gen. Motors Corp.*, 538 F.2d 621, 623 (4th Cir. 1976) (per curiam) (finding waiver of the argument that New Jersey law applied because the plaintiffs did not make that argument during trial).

However, determining what law applies to a particular claim is often a fact-intensive undertaking. *See, e.g.*, *Kenney v. Indep. Order of Foresters*, 744 F.3d 901, 907–08 (4th Cir. 2014) (stating that "the proper choice-of-law approach" is a "fact-intensive area"). Parties therefore may not be able to make appropriate and persuasive choice-of-law arguments without the benefit of discovery. District courts in this Circuit thus regularly defer choice-of-law issues until after the parties have completed discovery. *See, e.g.*, *Morris v. Bank of Am.*, 3:18-cv-00157-RJC-DSC, 2019 WL 1421166, at *3 (W.D.N.C. Mar. 29, 2019) (declining to decide choice-of-law issue until record was developed); *Anderson Gustafsson Advokatbyra, KB v. eScrub Sys., Inc.*, Civil Action No. 1:10-cv-632, 2011 WL 677053, at *2 (E.D. Va. Feb. 15, 2011) ("The Court finds that the choice of law for tort and contract based claims should be determined with the benefit of a more complete record pending discovery."); *Malinowski v. Lichter Grp., LLC*, Civil No. WDQ-14-917, 2015 WL 1129522, at *4 (D. Md. Mar. 11, 2015) (declining to resolve choice-of-law issue at motion-to-dismiss stage because its "fact-intensive" and "context specific" inquiry made it

appropriate to defer "until after the parties have engaged in discovery" (citation omitted)). We agree that this approach will often be the best course and Contractor cites neither binding nor persuasive precedent to the contrary.[5] We thus conclude that the district court did not err in determining that Staffing Agency did not waive the choice-of-law issue by failing to raise it in its motion to dismiss.

B.

Having resolved that threshold issue, we now turn to the substantive choice-of-law arguments made by the parties. For the reasons explained below, we conclude that the court did not err in its determination of the state law governing the claims for conversion, fraud, negligence, negligent misrepresentation, and UDTPA violations.[6]

---

[5] None of the out-of-circuit cases on which Contractor relies persuade us to adopt its position and all are substantially distinguishable. *See Lott v. Levitt*, 556 F.3d 564, 567–68 (7th Cir. 2009) (concluding plaintiff waived choice-of-law argument by expressly stating in response to the defendants' motion to dismiss that he agreed that Illinois law governed the dispute and then, months later, arguing for the first time that Virginia law should have governed when asking the court to reconsider its ruling); *Kabbash v. Jewelry Channel, Inc. USA*, No. A-16-CA-212-SS, 2017 WL 2473262, at *5 n.8 (W.D. Tex. June 7, 2017) (declining to find waiver based on defendant's prior reliance on California law to support its motion to dismiss and instead holding only that "the application of California law will, at the very least, not frustrate the parties' expectations"); *CMFG Life Ins. Co. v. RBS Sec. Inc.*, No. 12-cv-037-wmc, 2014 WL 3696233, at *3–4 (W.D. Wis. July 23, 2014), *rev'd in part on other grounds by* 799 F.3d 729 (7th Cir. 2015) (refusing to allow a renewed motion to dismiss based on the application of a different state's law mentioned in newly produced documents because the defendant had drafted those documents such that the defendant should have been aware that they contained a choice-of-law provision that could have been invoked earlier in the litigation).

[6] The parties do not dispute the state law applicable to the breach-of-contract claim and counterclaim.

A federal court exercising diversity jurisdiction—as is the case here—applies the choice-of-law rules of the state in which it sits. *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599–600 (4th Cir. 2004). Therefore, the district court properly applied North Carolina's choice-of-law rules to determine which state's substantive law governs Contractor's claims.

The choice-of-law rule relevant to this appeal is North Carolina's *lex loci* test.[7] This rule applies to "tort or tort-like claims" and provides that the law of the state where the injury occurred governs. *SciGrip*, 838 S.E.2d at 343. An injury is "sustained . . . where the last act occurred giving rise to the injury." *Harco Nat'l*, 698 S.E.2d at 724 (cleaned up). Therefore, applying *lex loci* involves identifying where the last act giving rise to the purported injury occurred.

---

[7] The parties also disagree on whether *lex loci* applies to the UDTPA claim at all. Some courts have applied *lex loci* to UDTPA claims, *see United Va. Bank v. Air-Lift Assocs.*, 339 S.E.2d 90, 93 (N.C. Ct. App. 1986), whereas other courts have applied the most significant relationship test to such claims, *see Andrew Jackson Sales v. Bi-Lo Stores, Inc.*, 314 S.E.2d 797, 799 (N.C. Ct. App. 1984), under which courts identify the state with the predominant connection to the case based on a number of factors, *see SciGrip*, 838 S.E.2d at 343. Relying on this split of authority, Contractor argues that the most significant relationship test should govern its UDTPA claim. However, Contractor forfeited its argument for the application of the most significant relationship test by failing to raise it before the district court. In Contractor's brief in opposition to Staffing Agency's motion for summary judgment, Contractor never argued that the most significant relationship test applied. *See* Contractor's Memorandum in Opposition at 12, No. 7:19-cv-00221-BO, ECF No. 71 ("*Lex loci* . . . determines which state's law applies in tort actions."). Because "[i]n this circuit, issues raised for the first time on appeal are generally not considered absent exceptional circumstances," *Holly Hill Farm Corp. v. United States*, 447 F.3d 258, 267 (4th Cir. 2006) (cleaned up), we will not consider Contractor's belated argument that the most significant relationship test governs and will instead apply *lex loci* to this claim.

The "last act" causing injury for most of Contractor's tort claims arose in Virginia. For the fraud and negligent-misrepresentation claims, Contractor alleges that Staffing Agency misrepresented that the contractual bill rate would include overtime and that each line item on the invoices was supported by a signed and accurate time sheet. Similarly, on its negligence claim, Contractor asserts that Staffing Agency was negligent in, *inter alia*, failing to ensure temporary workers had the necessary skills and failing to correct billing errors. And finally, for its UDTPA claim, Contractor alleges that Staffing Agency's fraudulent representations regarding the quality of its workers and the bill rate constitute deceptive trade practices. Contractor argues that these misrepresentations and negligence caused it to pay Staffing Agency's faulty invoices. *See, e.g.*, J.A. 52 (alleging that "[b]ased upon the representations that were made by [Staffing Agency], . . . [Contractor] entered into the contract, continued to pay invoices as submitted by [Staffing Agency], resulting in tendering the Total Amount Paid to [Staffing Agency]"); J.A. 56 (alleging that Contractor suffered damages "including all or a substantial portion of the Total Amount Paid under the invoices" based on Staffing Agency's unfair practices). Contractor paid the invoices from its bank account located in Virginia; therefore, the district court correctly determined that Contractor's injury related to each of these claims occurred in Virginia and that Virginia law governs them. *See Harco Nat'l*, 698 S.E.2d at 726 ("[P]laintiff's causes of actions accrued when the North Carolina Department of Insurance seized plaintiff's funds that were held in a North Carolina trust account by a North Carolina bank . . . . At that time, plaintiff involuntarily parted with tangible property located in North Carolina, constituting the injury necessary to create causes of action against defendant for negligence and

12

negligent misrepresentation. . . . [I]t is the location of the funds in North Carolina at the time of the seizure and not the location where the funds were received that is dispositive.").

Contractor counters that it suffered other injuries in the form of lost revenue and reputational harm related to the River Landing Project; expenses when it was forced to redo Staffing Agency employees' sub-par work; and the filing of the Collections Lawsuit, all of which occurred in North Carolina. But there is insufficient evidence that these injuries actually occurred such that the district court did not err in applying Virginia law—the law of the place where the last *demonstrated* injury occurred—to Contractor's negligence, negligent-misrepresentation, fraud, and UDTPA claims.

At summary judgment, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by" "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). But Contractor has not pointed to evidence supporting its claimed injuries and thus failed to carry its burden at summary judgment. *See, e.g.*, *Cybernet, LLC v. David*, 954 F.3d 162, 172–73 (4th Cir. 2020) (affirming grant of summary judgment when the nonmoving party failed to point to evidence supporting its claimed damages).

For example, to support its claim of lost revenue, Contractor cites three invoices it sent to homeowners but nothing indicating that those homeowners declined to retain Contractor or that the invoices were not paid. Contractor does not point to anything specific in the record supporting either the determination or amount of claimed damages, and its conclusory statements of damages—such as Russell's deposition testimony in which he claimed deficiencies in temporary employees' performance of certain tasks but "c[ouldn't]

13

give . . . the specifics," J.A. 2836—alone are insufficient to survive a motion for summary judgment. *See, e.g.*, *Dash*, 731 F.3d at 311 (stating that at summary judgment, a nonmoving party must rely on "more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence"); *McKenny v. United States*, 973 F.3d 1291, 1303 (11th Cir. 2020) (agreeing that conclusory interrogatory responses lack probative value sufficient to defeat summary judgment because they asserted an amount of tax liability with no explanation or detail as to how that amount was calculated); *Amoah v. McKinney*, 875 F.3d 60, 63 (1st Cir. 2017) (determining that conclusory interrogatory responses provided no basis for deciding that the district court erred in its summary-judgment decision). Therefore, because there is insufficient evidence supporting the claimed injuries that could change the choice-of-law analysis, the district court did not err in applying Virginia law.

Lastly, the district court did not err in determining that Tennessee law governs Contractor's conversion claim. As it relates to conversion, Contractor's complaint alleges that Staffing Agency exercised control over funds paid by Contractor and that properly belonged to Contractor, without Contractor's permission. *See Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 723 S.E.2d 744, 747 (N.C. 2012) (explaining that the two essential elements of a conversion claim are plaintiff's ownership and defendant's wrongful possession). The injury thus occurred in the state where Staffing Agency unlawfully retained Contractor's money, and Contractor does not dispute that Staffing Agency retained the money in its bank account in Tennessee. Therefore, Tennessee law governs the conversion claim under *lex loci*.

14

In sum, we conclude that the district court did not err in its choice-of-law analysis because (1) Staffing Agency did not waive its choice-of-law argument, and (2) the district court correctly determined the law governing each of Contractor's claims.[8]

## IV.

Contractor next argues that the district court erred in granting summary judgment to Staffing Agency on Contractor's breach-of-contract, UDTPA, fraud, and negligent-misrepresentation claims and on Staffing Agency's counterclaim for breach of contract.[9] But Contractor waived or failed to preserve five of its arguments, and we disagree with its other contentions of error. We address the waived and forfeited arguments first and then turn to the preserved issues.

## A.

First, Contractor's UDTPA argument under N.C. Gen. Stat. § 75-1.1 can be readily disposed of. As explained above, Virginia law governs this claim, but Contractor has not

---

[8] Further, assuming *arguendo* that the district court should have applied North Carolina law to Contractor's claims, Contractor never explains how the application of North Carolina law—which is very similar to the relevant Virginia and Tennessee law—would have led to a different result. In fact, the district court *did* evaluate Contractor's claims under North Carolina law and found that the claims would still fail under that state's law. As an alternative basis for our holding, we also conclude that any error made by the district court in its choice-of-law analysis was therefore harmless. *See* Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

[9] Although Contractor challenges the district court's choice-of-law analysis related to its negligence and conversion claims, it doesn't challenge the court's decision on the merits of those claims.

15

asserted that Virginia has a comparable statute to North Carolina's UDTPA or that it is alleging unfair trade practices under Virginia law—in spite of the fact that the district court granted summary judgment to Staffing Agency on this basis. *M.D. Russell Constr.,* 2022 WL 875993, at *9 ("At the outset, the Court has determined that Virginia law applies to plaintiff's tort claims, and thus the Court would not apply a North Carolina statute."). Contractor has thus waived any challenge to the district court's rejection of this claim. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by . . . failing to develop its argument—even if its [opening] brief takes a passing shot at the issue." (cleaned up)).

Second, on Contractor's negligent-misrepresentation claim, Contractor cites North Carolina law instead of the applicable Virginia law. Therefore, it has waived this challenge by failing to assert it under the proper state's law when it was on notice that Virginia law would apply if we agreed with the district court's choice-of-law determination. *See id.*

Third, Contractor argues that Staffing Agency breached the Contract by collecting payments based on unsigned and fraudulent timesheets. But Contractor failed to raise this issue before the district court and thus forfeited it. *See Holly Hill*, 447 F.3d at 267 ("[I]n this circuit, issues raised for the first time on appeal are generally not considered absent exceptional circumstances." (cleaned up)). Although in its summary-judgment briefing before the district court, Contractor conclusively stated that Staffing Agency "breached the provisions of the September 25 Agreement . . . by charging and collecting from [Contractor] amounts that related to invalid, unverified, uncertified, inaccurate, and false timesheets that had been submitted by temporary employees," Contractor's Memorandum

16

in Opposition at 15, No. 7:19-CV-221-BO, ECF No. 71; Contractor's Memorandum in Support at 5, No. 7:19-CV-221-BO, ECF No. 86, it did not elaborate or provide any citations to the record or argument on this point. And in response to Staffing Agency's forfeiture argument on appeal, Contractor cites only its response to Staffing Agency's statement of undisputed material facts, exhibits attached thereto, and Russell's deposition testimony. It does not point this Court to any *briefing* that shows that it adequately made this argument before the district court. Moreover, in its summary-judgment decision, the district court did not discuss any claim of breach based on unsigned or fraudulent timesheets, further supporting the conclusion that Contractor failed to adequately make this argument before the district court. *See M.D. Russell Constr.*, 2022 WL 875993, at *6–7. Therefore, we conclude that Contractor failed to preserve its argument that Staffing Agency breached the Contract by collecting payment for unsigned and fraudulent timesheets.

Fourth, also related to Contractor's breach-of-contract claim, Contractor argues that Staffing Agency breached the Contract by charging amounts in excess of the contractual bill rate, including overtime. Contractor contends that parol evidence could be used to show that "bill rate" was meant to include overtime because this term is ambiguous. *See Galloway v. Snell*, 885 S.E.2d 834, 836 (N.C. 2023) ("If a written contract is ambiguous, the contract's meaning and effect is a factual question for the jury and parol evidence may be introduced not to contradict, but to show and make certain what was the real agreement between the parties." (cleaned up)). But Contractor failed to raise this ambiguity argument before the district court and therefore forfeited it. More to the point, Contractor argued the exact opposite below, contending "bill rate" was *not* ambiguous. It cannot now make a

17

completely contradictory argument on appeal to that which it presented to the district court. *See M.D. Russell Constr.*, 2022 WL 875993, at *6 ("[T]he terms of the River Landing contract are not ambiguous and [Contractor] does not argue that they are."). As a result, we treat the Contract as unambiguous—meaning we "construe[] and enforce[] [it] according to [its] terms," *Galloway*, 885 S.E.2d at 836 (citation omitted)—and the terms simply do not require Staffing Agency to pay overtime. Therefore, this claim of breach fails.

Fifth, on Staffing Agency's counterclaim, Contractor asserts that the district court erred in finding Staffing Agency entitled to an award of attorneys' fees of 20% of the balance Contractor owed Staffing Agency for the unpaid final invoices. Contractor contends that N.C. Gen. Stat. § 6-21.2 provides a statutory cap on attorneys' fees at 15% of the balance owed and a mandatory notice requirement and that the district court failed to enforce compliance with those provisions. Contractor admits that it did not raise this statutory argument before the district court, but claims that it failed to do so because Staffing Agency did not request that the court award 20% attorneys' fees in its motion for summary judgment. That is blatantly wrong; in its summary-judgment motion, Staffing Agency stated: "[Staffing Agency] brings a counterclaim to recover attorneys' fees owed and provided for under the Contract (20% of the invoice amount)." Staffing Agency's Memorandum in Support at 28, No. 7:19-cv-221-BO, ECF No. 55. Therefore, Contractor was on notice that 20% attorneys' fees were at issue and had an obligation to make its N.C. Gen. Stat. § 6-21.2 argument before the district court. It has thus forfeited this argument on appeal.

18

B.

We now turn to the arguments Contractor has properly preserved, which relate to: (1) Contractor's breach-of-contract claim, (2) its claim of fraud, and (3) Staffing Agency's counterclaim for breach of contract.

First, Contractor asserts that Staffing Agency breached the Contract based on temporary employees' unsatisfactory work that Contractor had to redo. But the Contract places the burden of monitoring the employees on Contractor. *See* J.A. 1479 ("[Staffing Agency] do[es] allow a two hour skilled work guarantee. If the employee does not show the skills needed within two hours of show up time, call and [Staffing Agency] will pull them and pay them the two hours."). If Contractor felt certain employees did not have the necessary skills, it should have raised that issue as provided in the Contract rather than waiting until long after the employees performed the labor, Staffing Agency invoiced for that labor, and Contractor paid the invoices. *See Am. Nat'l Elec. Corp. v. Poythress Com. Contractors, Inc.*, 604 S.E.2d 315, 317 (N.C. Ct. App. 2004) (explaining that when a contract contains a notice provision with which a party fails to comply, that party's breach-of-contract claim fails under a plain application of the contract's language). Further, while Contractor claims it intended to review the timesheets after the River Landing Project was complete to determine if there were issues, Contractor failed to identify any factual basis for its purported right to unilaterally modify the Contract by "communicat[ing] its intent, at the conclusion of the engagement, to review and discuss any discrepancies and problems that arose with respect to . . . temporary employees." Opening Br. 11. Nor is there any basis in law for such a right. *See NRC Golf Course, LLC v. JMR Golf, LLC*, 731 S.E.2d 474, 480

19

(N.C. Ct. App. 2012) (explaining that a contract modification must be supported by consideration). Therefore, Staffing Agency did not breach the Contract by billing for labor that Contractor deemed inadequate after the fact.

Second, proceeding to Contractor's fraud claim, and applying Virginia law pursuant to the discussion above, to establish fraud, a plaintiff must identify evidence of an intent to mislead. *See Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 297 (Va. 1999). Contractor points to a statement allegedly made by Creech during a conversation with Russell that the increased bill rate of $23.50 would cover any overtime charges such that Contractor would not be separately billed for overtime. But Contractor identified no evidence suggesting that Creech intended to mislead Contractor when she made this statement. Contractor claims that the Court should "infer" from Creech's "lack of authority within [Staffing Agency]" that her statement regarding the bill rate including overtime "was made with the intention that it would never be performed or honored by [Staffing Agency]." Opening Br. 45. But Contractor's citations to the record on this point have nothing to do with Creech's authority (or lack thereof) within Staffing Agency. And even assuming Creech lacked authority to set the bill rate on her own, that simply does not reasonably lead to the inference that she made a promise about the bill rate with intent to mislead Contractor. *See Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (explaining that courts must draw *reasonable* inferences in the nonmoving party's favor at the summary-judgment stage). Therefore, the district court properly granted Staffing Agency summary judgment on this claim.

Third, turning to Staffing Agency's counterclaim for breach of contract, Contractor argues that the district court should not have granted Staffing Agency summary judgment because "[Staffing Agency], through an internal audit and investigation, established that the amount sought in the counterclaim, $38,810.37, relates to inaccurate, false, fraudulent, unverified, and invalid time sheets." Opening Br. 50. The "audit" to which Contractor refers is an internal email between Staffing Agency employees breaking down the unpaid invoices by hours that were approved or verified by a supervisor's signature and hours for which there was no supervisor's signature on the timesheet. *See* J.A. 2239–40. But the email is insufficient to raise a genuine dispute of material fact as to the counterclaim. Contractor doesn't give any specifics regarding which hours on the unpaid invoices it is challenging. And assuming for the sake of argument that the "audit" establishes that some portion of the unpaid invoices was unverified by the requisite signatures and that Contractor shouldn't have to pay for those unverified hours, Contractor does not indicate how much it was billed for that labor such that some amount could be taken out of the $38,810.37 total of the unpaid invoices. Finally, Staffing Agency's "audit" does not indicate anything about fraudulent timesheets, and the temporary employee who allegedly forged his timesheets is not listed in the email as being included on the unpaid invoices, so Contractor simply has no valid argument that the unpaid invoices include any fraudulently billed time. In sum, Contractor has not pointed to any evidence raising a genuine dispute of material fact on Staffing Agency's entitlement to payment for the unpaid invoices, and the district court properly granted Staffing Agency summary judgment on its counterclaim.

21

## V.

In conclusion, we find that the district court did not err in its choice-of-law analysis or its summary-judgment determinations. We therefore

*AFFIRM.*